## COHEN v. DAVIS et al.

THE provisions of the amendatory Homestead Act, passed April 28th, 1860, are not applicable to homesteads acquired previous to its passage, until the filing by the claimants of the declaration therein provided for.

The proper construction of the Act of 1860 is, that parties having homesteads under the Act of 1851 shall have the right to take the benefits of the provisions of the new act, and to claim their protection, upon complying with its requirements. They are not compelled to accept its benefits or submit to its restrictions, and their rights, as they existed under the old act, are secured until they make an election to accept the provisions of the new act by filing the declaration, or to abandon the homestead, for which purpose they are allowed a specified period.

Where, subsequent to the passage of the Act of 1860, a husband and wife, not having filed any declaration under that act, executed a mortgage upon their homestead premises, acquired previous to its passage : *Held*, that the mortgage was a valid lien upon the premises as against the homestead claim.

APPEAL from the Third Judicial District.

The facts are sufficiently stated in the opinion of the Court. The following are the second and fifth sections of the amendatory Homestead Act of 1860, referred to in the opinion :

" Sec. 2. Such exemption shall not extend to any mechanics', laborers' or vendors' lien, lawfully obtained, but no mortgage or alienation of any kind, made for the purpose of securing a loan or indebtedness upon the homestead property, shall be valid for any purpose whatsoever ; *provided*, that a mortgage or alienation to secure the purchase money or pay the purchase money shall be valid, if the signature of the wife be obtained to the same, and acknowledged by her separately and apart from her husband. Nor shall said homestead property be deemed to be abandoned without a declaration thereof, in writing, be signed and acknowledged by both the husband and wife or other head of a family, and recorded in the same office and in the same manner as the declaration of claim to the same is required to be recorded ; and the acknowledgment of the wife to such declaration of abandonment shall be taken separately and apart from her husband ; *provided*, that if the wife be not a resident of this State, her signature, and the acknowledgment thereof, shall not be necessary to the validity of any mortgage

or alienation of said homestead before it becomes the homestead of the debtor."

" Sec. 5. All parties entitled to homesteads under the act to which this act is amendatory, shall be entitled to the benefits of the provisions of this act ; and such homesteads shall be protected to the same extent and in the same manner as if acquired under the provisions of this act. And no rights acquired under said act shall be lost or in any manner impaired, by reason of any provision contained in this act ; *provided*, that all parties holding and claiming homesteads under the provisions of said act shall have one year, from and after the passage of this act, in. which to prepare and file for record the declaration required by section first of this act ; and in making such declaration, it shall not be necessary, in cases where there has been a prior actual occupancy by the family of the homestead, and a subsequent temporary abandonment, to allege the actual residence, at the time of such declaration, on the premises. In case there be no such declaration filed within said period of one year, the homestead shall be deemed to have been abandoned."

*Hoge & Wilson* and *A. A. Cohen*, for Appellant.

I.   The Act of 1860 has no effect on homesteads acquired before its passage, until the declaration required by it has been filed ; in other words, the old law stands in full force for one year from the passage of the amendatory Act, or until declaration filed.

The wording of section one is :   " The homestead to be selected," and that all homesteads acquired under the Act of 1851, " shall be deemed to be held by husband and wife in joint tenancy." Such language is inconsistent with the idea that the Legislature intended that the Act of 1860 should apply to old homesteads until declaration filed.   Such could not have been its intention, because it had not the power to say that the homestead, which is supposed to be carved out of the common or separate property of the husband, and the legal title to which was vested in the husband in fee simple absolute, should, from and after the passage of the Act of 1860, be vested in him only as a joint tenant with another, without some assenting act on his part. (See *Dewey* v. *Lambier*, 7 Cal. 347 ; 1 Hilliard's Real Prop. ; 4 Kent's Com. 357 ; *Billings* v.

Cohen *v.* Davis.

*Hall,* 7 Cal. 13 ; *Taylor* v. *Porter,* 4 Hill ; *Gillan* v. *Hutchinson,* 16 Cal. 155 ; *Montgomery* v. *Kass,* Id. 193.) The construction for which we contend renders the entire law perfectly consistent, effectual in all its parts, and such a law as the Legislature had the constitutional power to enact. By filing the declaration and electing to take a homestead under the Act of 1860, the husband consents to hold his estate as joint tenant with his wife. The rule is, to give such a construction to a statute as will make every portion of it effectual, and yet be constitutional, and this can only be done in this instance by the view we sustain. (*Hayes* v. *Jenks,* 2 Pick. 172.)

II. The parties were not forced to hold under the new law. It was entirely a matter for their own choice, to be evidenced by an affirmative act, viz : by making and filing their declaration of intention. Until that was done, the old estate continued with all its incidents, and the mortgage complying with all the demands of the old law was valid and effectual. Section two of the Act of 1860 requires the abandonment to be recorded in the same office as the declaration of claim is recorded, showing clearly that the abandonment need not precede the claim of homestead.

III. The principles laid down in the opinions of this Court in the cases of *Gee* v. *Moore,* (14 Cal. 478) *Guiod* v. *Guiod,* (Id. 507) and *Bowman* v. *Norton,* (16 Id. 165) apply to this case, as much so as if the amendatory Act of 1860 had never passed.

In this case, the parties had the right to take a homestead on the premises ; instead of exercising that right, they chose to mortgage, and as an inducement to the mortgagees to enter into the transaction with them, they voluntarily and explicitly expressed their election not to avail themselves of the protection of the new law by executing and filing an abandonment of their right or claim to a homestead on the mortgaged premises, executed and acknowledged with all the solemnities required by the statute.

*Wise and Gough,* for Respondents.

I. The amendatory Act of 1860 was approved April 28th, 1860, and went into effect on that day. The mortgaged premises

then constituted the homestead of Davis and wife, and they were allowed one year to file their declaration. A declaration filed at any time within a year was good, to give them the benefit of the Act of 1860. Mrs. Davis made her declaration March 30th, 1861, and it was acknowledged and recorded the same day. It was, under the Law of 1860, just as fully and conclusively their homestead for the year, as if the declaration had been made before the pretended mortgage was executed. And if either, or both of them, filed a declaration within the year, it was just as good as if it had been filed before any attempt to mortgage it. We do not see how this proposition can possibly be denied. It is almost precisely like a recording act in some of the States, where a purchaser is allowed so many months to record a deed, and if recorded within the time it is good and valid, and if not, it is sometimes postponed to the rights of subsequent purchasers, and sometimes it is void. The argument, then, is this : 'We had a homestead when the Law of 1860 went into effect ; that law declared it our homestead forever, provided we filed a declaration within a year ; we did file such declaration, and, of course, it follows that it was our homestead from the day of the passage of the Act of 1860.

On the twenty-fourth of April, 1861, the time was extended for filing the declaration for another year. (See Acts of 1861, 232.) Under this act, Davis made his declaration. So that Mrs. Davis and Mr. Davis both made their declarations of homestead.

II.   The mortgage was not a valid lien upon the property. No mortgage upon the homestead is valid for any purpose whatever, unless it is to secure or pay the purchase money. The homestead cannot be deemed to be abandoned under any circumstances, until there is a declaration in writing, signed by both husband and wife, and acknowledged and recorded. It does not cease to be their homestead, even according to the argument of appellant, until the declaration of abandonment is recorded. The recording must be the act and deed of the husband and wife, as well as the making. The recording is not intended alone as notice to the world. Perhaps it is not intended for any such purpose. It is, perhaps, intended to be the only evidence which the law allows that

Cohen *v.* Davis.

the parties intended to abandon their homestead after they had left it.

In this case, the attorney for the mortgagees had the abandonment recorded for the mortgagees. It was placed in his hands with the mortgage, and to be recorded with it. And it is in evidence that all the papers were made at the same time, were acknowledged at the same time, and were recorded at the same time. The declaration of abandonment was not recorded until three days after the mortgage was acknowledged. The mortgage was acknowledged on the fifth, and the declaration of abandonment was not recorded until the eighth of November, 1861. As, therefore, a mortgage upon a homestead is void, and it is a homestead until a declaration of abandonment is recorded, and, as in this case, the mortgage was made three days before the declaration of abandonment was recorded, the conclusion is inevitable that the mortgage was void when it was made.

The recording is intended for the benefit of the husband and wife. It must precede the mortgage. No right is acquired to be defeated, and everything is as open to the mortgagee as to the mortgagor. Nothing, perhaps, is plainer than the very language of the statute. We apprehend that our learned opponents will not contend that the language is not with us, but will try to weaken it by likening it to a recording act. We contend, on the contrary, that the provision under consideration is, in no particular, like a recording act, intended to give notice to parties. It is the thing itself that is to be done, and not notice that the thing is done. It is like the deed, that is made to convey, rather than the recording of that deed, to give notice to subsequent purchasers. No delivery is to be made of this declaration of abandonment to any person. No person has an interest in it but the husband and wife. They alone are the persons who can have it recorded. Will it be contended that if a declaration of abandonment is made and signed, and acknowledged by both husband and wife, but yet never recorded, that any abandonment has taken place ? Suppose it was lost or stolen, and recorded, would it be their act and deed, or be good ? If they were to send an agent with it to have it recorded, could they not countermand that order before it was delivered to be re-

corded ? Is there not always a "*locus pœnitentiœ*," until it is recorded ? And is it not absolutely necessary to record it at some time ? These, we say, must be palpable truths to any lawyer. And if it is to be so recorded, so as to allow liens to take effect, when must it be ? The law says the mortgage shall not be valid, for any purpose whatever, if made upon the homestead—and it is a homestead until the declaration of abandonment is recorded by the parties themselves. It follows, that the abandonment must be recorded before a lien can attach. This is a proceeding intended to divest a married woman of her right. This being so, the forms of the law must be strictly complied with, or the act will be absolutely void. (*Whittaker* v. *Blair*, 3 J. J. Marsh, 236 ; *Prewitt* v. *Graves*, 5 Id. 114 ; *Applegate* v. *Gracy*, 9 Dana, 215 ; *Scarborough* v. *Watkins*, 9 B. Munroe, 540 ; *Elliott* v. *Peirsol*, 1 Pet. 339 ; and *Mitchell* v. *Story*, 23 Mis., 1 Cush. 264.)

The result of all the authorities is this, that where the law says that certain things must be done to pass away an interest of a wife, it must be strictly complied with. An acknowledgment or recording is absolutely necessary, if made so by the statute. Our statute makes recording necessary, and it must be done or it is void. (See also *Selover* v. *The Russian Amer. Com. Co.*, 7 Cal. 273 ; *Kendall* v. *Miller*, 9 Id. 592 ; *Bours* v. *Zachariah & Wife*, 11 Id. 290 ; and *Harrison* v. *Brown*, 16 Id. 287.)

III. Whether that portion of the act which creates a joint tenancy is constitutional or not, is immaterial. If so, it does not vitiate the whole act. This is not a contest between Davis and his wife as to whether they are joint tenants or not. It is perfectly competent for the Legislature to exempt the homestead from forced sale. The Constitution enjoins it. This is all that we now ask ; and this has so often been declared constitutional by this Court that it is not a debatable point.

FIELD, C. J. delivered the opinion of the Court—COPE, J. concurring.

This is an action for the foreclosure of a mortgage executed by Davis and wife to the plaintiff and one Thomas, to secure the payment of the promissory note of Davis for the sum of $10,000, and

interest thereon.   The premises are situated in Alameda county, and at one period had been occupied by Davis and wife as their homestead.   The mortgage bears date the fifth of November, 1860, and at that time Davis and wife occupied a rented cottage in San Francisco ; and Davis, whilst negotiating the loan for which the mortgage was given, represented that his family resided in San Francisco, and that he only visited the premises in Alameda to see to his business.   The mortgagees, however, for greater protection, took from the parties a written declaration of their abandonment of all claim to the premises as a homestead, duly acknowledged by both—the acknowledgment of the wife being taken separately and apart from her husband.   The declaration bears date on the thirty-first of October, 1860, but was acknowledged and delivered to the mortgagees in connection with the mortgage.   Both were recorded at the same time—on the eighth of November, 1860.   Subsequently, in March, 1861, Mrs. Davis filed a declaration, claiming the entire mortgaged premises as a homestead, under the Act of 1860.   In November following, Davis himself filed a similar claim to a portion of the premises.

· The defense to the foreclosure is, that the premises, notwithstanding the declaration of abandonment, constituted the homestead of the parties until the declaration was recorded ; and that the mortgage, having been executed before such record was made, is invalid and void.   The Court below held that the record of the declaration was essential to its efficacy as an abandonment of the homestead claim ; but as it appeared the mortgaged premises exceeded in value the amount of the exemption allowed by law, it directed, upon the report of appraisers appointed for that purpose, a portion of the premises to be set apart to the parties as a homestead, and decreed a sale of the remainder.   From the decree both parties appeal—the plaintiff objecting that the homestead claim was allowed against his mortgage, and the defendants objecting that the mortgage was held valid for any purpose.

In considering the question thus presented as to the efficacy of the mortgage, we shall assume that the premises constituted, at the time of its execution, the homestead of the mortgagors.   We shall not stop to notice the testimony, which creates some doubt on this point, or

the equivocal language of Davis as to his residence in San Francisco, used at a time when to be frank was simply to be honest. Assuming that they constituted a homestead, they became so by the residence of the mortgagors thereon, under the Act of 1851. That act does not declare what shall be deemed an appropriation of premises as a homestead, or what shall be deemed an abandonment. These matters were left to judicial determination upon the circumstances presented in each particular case. And the Courts held that occupancy of the premises by the husband with his family was presumptive evidence of such appropriation ; and the logical consequence followed, that removal from the premises was held presumptive evidence of their abandonment as a homestead. (*Forbes* v. *Harper*, 15 Cal. 202.) The amendatory Act of 1860 changes this, and declares, as to homesteads subsequently acquired, that the appropriation shall be made by a declaration in writing, signed and acknowledged by the parties, and recorded, as conveyances are required to be acknowledged and recorded; and also, that an abandonment shall be made by a like declaration, signed, acknowledged and recorded in the same office with the original declaration claiming the premises. The provision as to the record of the declaration of abandonment, as will be thus seen, supposes that a declaration of claim has been also recorded ; and this circumstance must be borne in mind in the construction of the fifth section of the Act of 1860. That section enacts, that all parties entitled to homesteads under the original Act of 1851, shall be entitled to the benefits of the amendatory Act; but, as we construe it, not absolutely without any further proceedings on their part, but as parties holding under the amendatory Act are entitled—by filing a written declaration claiming the premises. The proviso following, which is to be read in connection with the clause in question, supposes such declaration *is* to be made ; it does not provide that the declaration *shall* be made, but assuming that it is to be made, it extends to the parties the privilege of making it for one year, and without alleging an actual residence at the time, in case there has been a temporary abandonment. And in the same manner we read the last clause of *the* first paragraph in connection with the proviso. Homesteads acquired under the Act of 1851 shall be protected to the same ex-

Cohen *v.* Davis.

tent and in the same manner as if acquired under the amendatory Act—not absolutely, without any action on the part of the parties, but upon their filing a written declaration claiming the premises ; for if no declaration, says the same section, be filed within one year, the homestead shall be deemed to have been abandoned. The whole paragraph, in other words, read with what follows, amounts to this: that parties having homesteads under the Act of 1851 shall be entitled—that is, shall have the right—to take the benefits of the provisions of the new act, and to claim their protection upon complying with its requirements. It is not the intention of the latter act to compel parties, against their consent, to accept of its benefits or submit to its restrictions, but to extend to them the privilege to do so, if they choose. Nor is it the intention to qualify or impair in any manner the rights which parties may hold under the original act; but, on the contrary, to secure their rights, as they existed under its provisions, until an election is made to accept of the conditions of the new act or to abandon the homestead, for which purpose the parties are allowed one year—a period which, by a subsequent act, has been still further extended. This construction removes many inconsistencies in the very awkwardly drawn Act of 1860, and also objections which might be otherwise urged to the constitutionality of some of its provisions. The act changes the estate of the parties into a joint tenancy ; but, according to our view, only upon their consent, evidenced by their declaration claiming the benefits of the act. It may be questioned whether it is within the legislative power to thus change the estate of the parties without such consent. (*Dewey* v. *Lambier,* 7 Cal. 347.) The act also requires a record of the declaration of abandonment to be filed, as we have stated, in the same office with the original declaration of claim—a thing impossible, if no such original declaration has ever been made. Construed as only applying to cases where a declaration of claim has been filed, the act affords protection to the honest man, and prevents the perpetration of gross frauds, such as has been attempted in the present case. In our judgment, the homestead rights of Davis and wife are to be determined by the Act of 1851, until the declaration claiming the premises as a homestead was filed for record in 1861, and not by the Act of 1860. The mortgage in controversy, therefore, exe-

cuted upon the homestead by both husband and wife before such declaration was made, is valid, and binding upon the premises.

The conclusion to which we have thus arrived upon the principal question presented, renders it unnecessary to notice the minor objections urged to the decree by the defendants.    The decree must be reversed, and the Court below directed to enter a decree in the usual form for the sale of the entire mortgaged premises.

Ordered accordingly.