## FERDINAND DUNKER, Respondent, *v.* GEORGE W. CHEDIC *et als.*, Appellants.

Mortgage of Homestead by Husband and Wife. The Act of March 6th, 1865, (Statutes of 1864–5, 224) to exempt the homestead and other property from forced sale in certain cases, in so far as it provides that no valid mortgage, for the purpose of securing a loan or indebtedness, can be made by husband and wife upon their homestead, is unconstitutional.

Constitutional Construction as to Homestead Mortgages. The Constitution, (Art IV, Sec. 30) which prescribes that the homestead "shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife * * *provided*, the provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife," etc., expressly prohibits the Legislature from exempting the homestead from forced sale upon a lien created by husband and wife for a loan or indebtedness.

Appeal from the District Court of the Second Judicial District, Ormsby County.

This was an action against George W. Chedic, A. A. Chedic, his wife, and Gregory A. Sears, administrator of the estate of Charles G. Chadwick, deceased, to foreclose a mortgage for five hundred dollars, borrowed money, on certain timber and other land and improvements in Ormsby County. The mortgage was executed on April 12th, 1865, by George W. Chedic and wife and C. G. Chadwick, deceased. The defendants Chedic and wife answered, setting up that a portion of the premises mortgaged was their homestead, and that the mortgage created no lien upon it, and was, in so far as such property was concerned, void. To this answer plaintiff interposed a demurrer, which was sustained by the Court below, and judgment finally rendered in favor of the plaintiff.

*Robert M. Clarke,* for Appellants.

### I.

The Constitution of Nevada is not a grant of power or enabling Act to the Legislature, but a limitation or restriction upon legislative power, and is only so far a limitation as appears either by *express terms,* or by *necessary implication.*

## II.

Unless *inhibited* by the Constitution, the Legislature had the power to enact that "no mortgage  *  *  made for the purpose of securing a loan  *  upon the homestead property should be valid." (Statutes of 1864–5, 224, Sec. 2 ; 17 Cal. 23, 547 ; 13 Cal. 159 ; 12 Cal. 378 ; 22 Cal. 293 ; 26 Cal. 161 ; 29 Cal. 403.)

## III.

The Constitution, neither by *express terms* nor by *necessary implication* inhibits the Legislature from enacting that "no mortgage  *  *  made for the purpose of securing a loan  *  upon the homestead property shall be valid." The power is neither *affirmed* nor *denied* by the Constitution ; and as it is not denied, it must exist as·a part of the general legislative sovereignty. The restrictions upon the Legislature in this particular are but three, viz : "no property shall be exempt from sale for taxes, or for the payment of obligations for the purchase of said (the) premises, or for the erection of improvements thereon."

The Constitution contains no other limitation, and it is reasonable to suppose that if the Convention had intended any other they would have so declared. Invoking the rule " *expressio unius est exclusio alterius*," the law must stand.

The *proviso* to Section 30, Art. IV, of the Constitution, forbids nothing. It neither contains words of limitation, nor does it by necessary implication restrict the power of the Legislature. It is a simple interpretation or construction placed upon the preceding clause of the section by the Convention—a declaration that their legislation shall in no sense be held to affect, affirm, or deny the right to mortgage the homestead—thus leaving the question open to the Legislature in the exercise of their general sovereignty. (Con. Art. IV, Sec. 30, Smith's Commentaries, 711, 712, Secs. 576, 577, 578.)

## IV.

The Act of March 6th, 1865, "exempting the homestead, etc., from forced sale," having received the sanction of two departments of the State government, will not be held unconstitutional except

its repugnancy to the Constitution is clear, and free from reasonable doubt. Whilst the Court is vested with the undoubted power to pronounce a law unconstitutional, it will exercise it with the utmost circumspection and most deliberate caution. Every doubt must be resolved in favor of the law. (26 Cal. 183; Gill & Johnson, 383; Sedgwick on Statutory and Constitutional Law, 592.)

*T. D. Edwards* and *W. S. Wood*, for Respondent.

The first general maxim of interpretation laid down by the best authority is, that it is not allowable to interpret what has no need of interpretation. (Vattell, b. 2, Ch. 17, Sec. 263.) When the words of the Constitution are in clear and precise terms—when its meaning is evident and leads to no absurd conclusion, there can be no reason for refusing to admit the meaning which the words naturally present; to go elsewhere in search of conjecture in order to restrict or extend the Constitution, would be but an attempt to elude it. Such a method, if once admitted, would be exceedingly dangerous, for there would be no law however definite or precise in its language which might not by interpretation be rendered useless. What interpretation does the constitutional provision in regard to homesteads require, when it is provided that the exemption "shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife"?

A mortgage is a lien; a lien obtained by the consent of both husband and wife is not exempt by the above clause of the Constitution. The statute declares that such lien shall be exempt, and therefore is repugnant to the Constitution, and should be set aside. (Smith's Constitutional Construction, Sec. 399.)

The sole object of interpretation of a statute is to discover the intention of the framers, and for that purpose we must consider what probably were the ideas of those who framed the section, and interpret it accordingly. If there should be any doubt about the meaning of the proviso of Sec. 30, Art. IV, of the Constitution, we refer them to the Constitutional Debates of the State of Nevada, (page 310) where the meaning of the proviso above referred to is fully discussed.

It must be apparent that the constitutional exemption for home-

steads does not cease to exist in the proviso by inference or implication, but that the exemption is actually forbidden in plain, unmistakable English, and that it is mandatory; and to derive any other sense from the proviso would be to distort the plainest of ideas and language. If the framers of the Constitution did not mean that the exemption should cease under such circumstances, what could have been their object in engrafting the proviso upon the section? What they do say is this, that the homestead shall be alienated by the joint consent of a husband and wife, where that relation exists, and that the exemption shall not exist where husband and wife both join in creating a mortgage lien.

By the Court, WHITMAN, J.

In March, 1865, the Legislature of the State of Nevada passed an Act entitled "An Act to exempt the homestead, and other property, from forced sale in certain cases."

Section second of the Act contains among other matter the following language:    *    *    *    *    "But no mortgage or alienation of any kind, made for the purpose of securing a loan or indebtedness upon the homestead property, shall be valid for any purpose whatsoever.    *    *    *    *    *    "

The State Constitution, in Section 30 of Article IV, headed "Legislative Department," reads thus: "A homestead, as provided by law, shall be exempt from forced sale under any process of law, and shall not be alienated without the joint consent of husband and wife, when that relation exists; but no property shall be exempted from sale for taxes, or for the payment of obligations contracted for the purchase of said premises, or for the erection of improvements thereon; *provided,* the provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife; and laws shall be enacted providing for the recording of such homestead within the county in which the same shall be situated."

The only question presented by the record in this case is as to the power of the Legislature, under the Constitution, to exempt the homestead from forced sale upon a lien created by husband and wife for a loan or other indebtedness.

Save that the Legislature must obey the direct commands of the Constitution, and submit to its express or necessarily implied prohibitions, it has unlimited law-making power, and would, unless otherwise clearly commanded, or prohibited, have the right to enact the law under review; and while on the one hand Courts should strive to preserve intact the landmarks of the Constitution, on the other, they should be chary of interference with legislative power. The section of the Constitution cited opens with the proposition that the homestead " shall be exempt from forced sale under any process of law." This is general, clear, and distinct, and were there no exception thereto the law must stand. Next follows the declaration that it " shall not be alienated without the joint consent of husband and wife, when that relation exists.", It might at first sight seem that the idea necessarily conveyed by that language would have been more forcibly expressed had the section said : husband and wife may by joint consent alienate the homestead; but not so, the language used expresses the precise meaning desired. Of course, no constitutional provision or statute to the contrary, every possible interest in the homestead could be alienated by joint consent. To say this was to pronounce a truism; but to say it " shall not be alienated without the joint consent of husband and wife, when that relation exists," was to prevent any legislative vacillation, and to settle not only what a temporary enactment might provide, but what the law should be while that Constitution lasted.

Here, then, the double general proposition of exemption; no forced sale under any process of law, and no alienation save by joint consent of husband and wife. Then follow the exceptions, which it is unnecessary to notice here. If the word " alienation" includes within its meaning a *mortgage*, there can be no doubt as to the express mandate of the Constitution; and it follows that husband and wife may mortgage, and that no legislation can prevent them. The Legislature understood that a mortgage was an alienation of some kind; for the language of the statute is, " no mortgage or alienation of any kind;" but it is unnecessary to accept a construction upon which the slightest doubt could rest; for as if, after providing generally for exemptions, and specially for exceptions, it had been

suggested that the word "alienation" might not cover a "mortgage," which might be considered only a lien created; or that there might be failure of remedy because the words "process of law" had been used in the first general exemption, and there was no exception thereto; in fullness of caution this language is added, to meet either or both anticipated objections: "*Provided*, the provisions of this section shall not apply to any process of law obtained by virtue of a lien given by the consent of both husband and wife."

What are the "provisions of this section"?  They are: First— "A homestead, as provided by law, shall be exempt from forced sale under any process of law."  Second—the homestead "shall not be alienated without the joint consent of husband and wife, when that relation exists."  These are the only provisions preceding the proviso, and to which it can refer; the other language containing only exceptions to the provisions.

This perhaps was not so elegant a mode of expression as might have been selected, but it possesses the merit of force; better a little repetition than a chance for doubt.  Is there such chance here?  The language is found in a section of an article, the whole object of which is to direct, command, or prohibit certain legislative acts.  It attempts to express some idea; thus found, and thus attempting, the natural conclusion is, that it means that the general provisions of exemption of homestead property shall not apply to such lien as is mentioned, nor to forced sale under any process of law for the enforcement thereof.  If these provisions may not apply, then no legislative action can make application.

The Legislature exceeded its powers in passing the law in question, for it has said therein that these provisions of exemption should apply to a lien created by husband and wife, which the Constitution has expressly said shall not.

The District Court therefore properly ordered a decree for plaintiff.  Its judgment is affirmed.

Lewis, J., dissented.